JOHN W. CARSWELL, executor, plaintiff in error, vs. HENRY
J. SCHLEY et al., defendants in error.

(This case was argued at the last term and the decision reserved.)

1. By the marriage settlement Mrs. Miller and her two children by Dr. Miller, were tenants in common of the whole property, each with an interest of one-third.

2. At the death of Mrs. Miller her third passed to him, half of it by survivorship, and the other half because he was her heir-at-law.

3. Dr. Miller was entitled to take the profits and labor of the whole property while his wife was in life only. After her death he and his two children by her, were tenants in common in both *corpus* and future profits.

4. In view of the doubtful construction of the marriage settlement, all the defendants in the original bill were proper parties.

Estates. Husband and wife. Administrators and executors. Distribution. Equity. Parties. Before Judge GIBSON. Burke Superior Court. November Adjourned Term, 1874.

Henry J. Schley, in right of his wife, and Baldwin B. Miller, filed their bill against John W. Carswell as executor of Baldwin B. Miller, deceased, Sarah Dowse and husband, Gideon Dowse, and Robert J. Morrison, making, in substance, the following case:

The testator, Baldwin B. Miller, intermarried with Rosina S. Morrison on October 29th, 1827, and complainants, Francis V. Miller, now Schley, and Baldwin B. Miller, were the only issue. At the time of such marriage Mrs. Rosina S. Morrison was a widow with two children, to-wit: the defendants, Sarah Dowse and Robert J. Morrison.

John B. Morrison, the former husband of Rosina S., was possessed of a large estate, real and personal, of the value of $........., to which there were three heirs-at-law, (said John B. having died intestate,) namely, the said Rosina S. and her two children aforesaid, each of whom took a third at the division. Before marriage the said Rosina S. and said testator, entered into a marriage settlement with James Anderson, trustee, whereby the property of the said Rosina S.,

one-third of the estate of her late husband, was conveyed to said trustee for the uses, trusts and purposes :

"That is to say, in trust for the said Rosina S. Morrison, until the said intended marriage shall take effect, and from and immediately after the solemnization thereof, then upon trust that the same shall not in anywise be subject or liable to the debts of the said Baldwin B. Miller, her intended husband, but that the said property, together with its increase, shall remain and inure to the proper use, benefit and behoof of the said Rosina S. Morrison and such child or children, being issue of her body, lawfully begotten by the said Baldwin B. Miller, to his, her or their heirs, executors, administrators or assigns forever. Provided, nevertheless, and it is expressly understood and agreed upon between the parties to this instrument, that the *mesne* profits and labor of the said property when divided, both of land and negroes, together with the increase of said negroes, shall and may be used and taken by the said Baldwin B. Miller, for the joint use, benefit and behoof of him, the said Baldwin B. Miller, and the said Rosina S. Morrison, during their joint lives, provided they shall live together, but if they should disagree and separate, then the aforesaid property shall remain with the said James Anderson in trust for the sole use and benefit of the said Rosina S. Morrison. And it is further expressly understood between the parties to this instrument, that if the said Baldwin B. Miller should die before the said Rosina S. Morrison, that the above property, with the increase of the negroes, shall go to and vest in the said Rosina S. Morrison, to her and her heirs, executors, administrators and assigns forever. And it is further understood that if the said Rosina S. Morrison should depart this life, with or without issue, that the aforesaid property shall vest and belong to the said Baldwin B. Miller during his natural life, and at his death one-half of said property shall go and be disposed of in such manner as he may think proper by last will and testament, or otherwise, to his heirs, executors and assigns ; and the remaining half or moiety of said property, the said Rosina S. Morrison shall

Carswell *vs.* Schley *et al.*

have full power and authority to dispose of by last will and testament, but should she make no disposition of it, it shall then vest in and belong to such person or persons as would be her heirs agreeable to the laws of this state."

Miller went into possession of the property embraced in the marriage settlement, and used and enjoyed it with the income and increase thereof, until his death. While he was a man of energy and capacity, he was at the time of said marriage of quite limited means, having little or nothing besides his profession as a doctor of medicine. Yet by the income and increase of said property judiciously used, applied and invested by him, he was, at the date of emancipation, estimated to be worth $300,000 00 or other large sum. But by the results of the war his estate was reduced, perhaps to the value of $150,000 00, all or most of which was increase of the property formerly of his said wife, now the property of complainants, which they claim, allowing that $1,000 00 may have been the result of his own labor and practice. The annual rental of the lands was worth the sum of $........., and the annual hire of the negroes, $........., to say nothing of the productiveness of the land, and the increase of the negroes, and other large profits accruing from said property.

Mrs. Rosina S. Miller, formerly Morrison, died September 19th, 1851. Her husband, the testator, administered on her estate. Subsequently he intermarried with Cornelia E. Polhill. He died on the 24th February, 1873, testate. By his last will and testament, (which was duly probated and admitted to record,) he "treated the whole property bequeathed by him as his own property." After some specific bequests, he devised the residue of his estate to his last wife and children. To his son, B. B. Miller, he gave the interest on $1,000 00, assigning as a reason therefor that he had made "sufficient provision" for him "by deed," and stating as a reason why he devised nothing to Mrs. Frances V. Schley, the other complainant, that he had "already made ample provision" for her "by deed of trust," in which he had "given

her a portion greater than will fall to the share respectively" of his children by his last wife.

Complainants claim that by the terms of said marriage settlement they took a vested fee simple in the property thereby conveyed, and its increase, subject to the use of the rents, issues and profits thereof by the said Miller, for the mutual benefit of himself and said wife during their joint lives, with a proviso that in the event of the death of his said wife, he surviving, he still to have the use of said property for life. Now that the life estate of said Miller is terminated, they are entitled to be put in possession of the property in the possession of his executor, of the value of $40,000 00.

John W. Carswell is executor of B. B. Miller, and they have demanded of him their property, also an account, and he refuses to comply with their request. He sometimes pretends that the whole estate, by the terms of said marriage settlement, vested in his testator upon the death of said Rosina S.; whereas complainants charge the contrary, and say that the clear intent of said instrument was to give the fee, in the event of child or children born of said marriage, to said child or children, reserving only a life estate, to be jointly enjoyed so long as both should live and live together, and in the event of her death before her husband, then for his life. At other times he pretends that, at least by the terms thereof, said instrument gives to said decedent one-half of said estate; whereas complainants charge the contrary, for the reasons above assigned, and state that if said Miller was entitled to any right of property at all in said trust estate, (which they deny,) it was only to one-half of the rents, issues and profits derived from the *corpus* of the estate, and which had accrued at the time when it came into his hands, together with the increase and profits of said rents, issues and profits, turned over at the time with the *corpus* of the estate. Again he pretends that there are other claimants for a part of the property, namely: Robert J. Morrison and Gideon Dowse, in right of his wife, Sarah Dowse, formerly Sarah Morrison, and that they insist that they are entitled with the Miller children to

an equal participation in said trust property. But complainants say that if said last named claimants are entitled to any part whatever of said estate, (which they deny,) it would only be an eighth each in the one-half of the aforesaid rents, issues and profits (and their increase) so received by Miller with the *corpus* of the estate, when he went into possession under said marriage articles.

The bill then prays for añ account of said property, and that the defendant, John W. Carswell, executor, may show what part of the estate now in his hands as such executor, was the original property of the said Rosina S., and what part of said estate is the direct increase or profits thereof, and either turn over the same or pay complainants its value in money; and that the said R. J. Morrison and Gideon Dowse and wife be made parties defendants and their rights adjudicated in this proceeding; also, for the writ of subpœna.

To this bill the defendant, Carswell, as executor of Miller, filed a demurrer on the following grounds:

1st. There is no privity between himself and said co-defendants, nor do complainants show by their bill such a case as entitles them to proceed against this defendant and the said Morrison and Dowse and wife as co-defendants.

2d. There is no equity in said bill, and the complainants are not entitled to the relief thereby prayed, or any part of such relief.

3d. If they are entitled to any relief whatever, they have a complete and adequate remedy at law.

Robert J. Morrison and Mrs. Dowse filed an answer in the nature of a cross-bill, admitting the facts alleged, but denying that by the terms of said marriage contract complainants have any greater interest in the property therein settled upon their mother than these defendants. On the contrary, they charge that said property, and its increase, was settled upon their said mother during coverture with Miller, and after her death the use and enjoyment thereof was given to said Miller for life, with power to dispose of one-half by will at his death; that as to the other half the power was given to their said mother to

dispose of that by will at her death; but the operation and effect of her will, should she make one, was to be postponed until the death of Miller, to whom said instrument conveyed the use and enjoyment of the whole property for life in the event of his surviving their said mother, which, in fact, happened. They state that their said mother died intestate, and they charge that Miller died without executing the power conferred on him by said marriage contract of disposing of one-half of said property by will, or of any part of the same, and that, therefore, by the terms of said contract the entire property and its increase passed to the persons who, at the time of Miller's death, were the heirs of their said mother, and they aver that respondents and complainants were the only heirs. Complainants have received a large part of said property from their said father, to-wit: each a plantation and much valuable personalty, whereas respondents have received nothing.

They pray that complainants may discover and account for what they have so received, and that Carswell, as executor, may be compelled to account to complainants and respondents for all the property embraced in said marriage contract, and its increase, and that complainants may be compelled to bring their said advancements into hotchpot and account for them in any division that may be decreed between them and respondents. Discovery is fully prayed against complainants, but waived as to Carswell, executor. They pray a decree settling all the equities between the parties, and for general relief.

Carswell, as executor of Miller, filed a general demurrer to said cross-bill.

Both demurrers were overruled, and Carswell, executor, excepted.

JOHN J. JONES; A. M. RODGERS, for plaintiff in error.

S. A. CORKER; W. W. MONTGOMERY; JAMES S. HOOK; PERRY & BERRIEN; E. F. LAWSON, for defendants.

Carswell *vs.* Schley *et al.*

BLECKLEY, Judge.

The true intention of the parties is to be sought for. That is the end of all construction.

The children of the former marriage were already provided for. Each of them had a share of the Morrison estate equal to that which came to Mrs. Morrison, the mother. In anticipation of a second marriage, she wished to provide for the possible offspring of that marriage, securing to herself, in the *corpus*, mere equality with each future child. The income which might accrue during the joint lives of herself and her intended husband she wished to go to the latter for their mutual enjoyment. In the event, however, of a separation, she desired it to be exclusively her own. If she survived him, then the whole *corpus* was to be hers, unless there were children of the marriage to share it; in which case, so much was to be hers as had not vested in them under the previous provisions of the instrument. If without any children of the marriage he survived her, the whole, or if with such children, her due share, was to vest in him during his life; half of it subject to disposition or descent, (equivalent to a vesting of the fee,) and the other half subject to her own disposition by will, and if not so disposed of, to go where the laws of the state might cast it at her death. We think this the most probable scheme of the marriage settlement; and it is one which the words will bear out better than any other that we have heard suggested or been able to surmise.

1. The first trust declared is unimportant, being merely for the benefit of Mrs. Rosina S. Morrison until her intended marriage with Miller. The next, after putting a negative upon liability for his debts, is, "that the said property, together with its increase, shall remain and inure to the proper use, benefit and behoof of the said Rosina S. Morrison and such child or children, being issue of her body, lawfully begotten by the said Baldwin B. Miller, to his, her or their heirs, executors, administrators or assigns, forever." Out of these words arise an equitable estate that must be referred to one of

three classes—an estate tail, an estate for life, with remainder to future children, or an estate in fee, subject, on the birth of children, to become an estate in joint tenancy or in common, the mother and children being thenceforth co-tenants in fee. It is not an estate tail, for the terms, "such child or children, being issue of her body, lawfully begotten by the said Baldwin B. Miller," are equivalent, in this instrument, to "such child or children as may be of her lawfully begotten by said Baldwin B. Miller;" the word "issue" being used in the sense of children proper, and not in the sense of a line or succession of descendants: 25 *Georgia Reports*, 305. It is not an estate for life in Mrs. Miller, with remainder to children; because (not to speak of any other reason,) subsequent provisions of the instrument show conclusively that her estate was to endure beyond her own life, one-half going to Miller, substantially in fee, on condition of his survivorship, and the other half being subject to a life estate in him, and to final testamentary disposition by her. This same fact also comes in aid of the view above presented against the theory of an estate tail; as, by these later provisions, Mrs. Miller's estate was to outlive her and go in the direction indicated whether she left issue or not, which is inconsistent with a purpose that the issue should take by way of entail. Two children were born of the marriage, and still survive, each of whom became a joint tenant or tenant in common with the mother, in the fee of the whole *corpus*, including the increase. For children not in *esse* at the execution of the conveyance to take thus under a marriage settlement, a trustee being interposed to receive and hold the legal estate, is no novelty. Even under ordinary trust deeds they can take: 52 *Georgia Reports*, 425; *Tucker vs. Lee*, this term.

Since the constitution of 1777, joint tenancy is resolvable virtually into tenancy in common: 23 *Georgia Reports*, 325. Thus far the language of the settlement is free from obscurity or real difficulty. It will abide severe scrutiny, and bear a rigid application of the canons of construction. It is, moreover, in strict accord with a not infrequent or unreasonable

intention of the parties to such instrument, the setting apart of an equal share of the wife's fortune to herself and each child of the contemplated marriage.    With this much of firm ground to stand upon, we cannot escape the conviction that the interest of these children was not intended to be cut down or in any way modified by later provisions of the settlement. That the two children became entitled and remained entitled to two-thirds of the *corpus*, we must believe; and what is apparantly to the contrary in the latter provisions, should, if possible, be reconciled with, and not be permitted to destroy, an antecedent provision which, besides the advantage of antecedence, has the advantage of perfect clearness.    We think reconciliation possible.    The passage to be now reconciled is as follows: " And it is further expressly understood between the parties to this instrument, that if the said Baldwin B. Miller should die before the said Rosina S. Morrison, that the above property, with the increase of the negroes, shall go to, and vest in, the said Rosina S. Morrison, to her and her heirs, executors, administrators and assigns forever.    And it is further understood that if the said Rosina S. Morrison should depart this life, with or without issue, that the aforesaid property shall vest and belong to the said Baldwin B. Miller, during his natural life, and at his death one-half of said property shall go and be disposed of in such manner as he may think proper by last will and testament, or otherwise, to his heirs, executors and assigns; and the remaining half or moiety of said property, the said Rosina S. Morrison shall and have full power and authority to dispose of by last will and testament, but should she make no disposition of it, it shall then vest in, and belong to, such person or persons as would be her heirs agreeable to the laws of the state."    It is true that the words "above property" in the first of these two sentences, and the words "aforesaid property" and "said property" in the second, seem to refer to the whole *corpus;* and it is true, also, that there is an express declaration that Miller was to take, on his wife's death, whether she died "with or without issue."    If such terms as "subject to the foregoing

provisions in favor of any child or children of the marriage" had been inserted in the appropriate position to qualify these clauses, all ambiguity would have disappeared. We think they are to be implied. The true construction, therefore, is, that the whole *corpus* was embraced in the words "above property," "aforesaid property," and "said property" with a tacit qualification, that in case children were born, the words were to be narrowed so as not to infringe upon their rights. In this flexible or reduced sense, the words would mean, not the whole *corpus* absolutely, but the whole, if Mrs. Miller remained sole owner; or her share, if children were born to share with her. She dying first without issue, Miller would take all; and so, too, if she died with issue, unless such issue were children of the marriage, in which event he would take all of her share only. Any other interpretation of these clauses would leave the children nothing, and render the provision in their behalf utterly nugatory. Another somewhat pertinent passage is left to be reconciled under the third head, when we reach the subject of income.

2. Having ascertained that Mrs. Miller's interest in the *corpus* was reduced to one-third, what became of it upon her death? Under the language last quoted from the marriage settlement, it passed to Miller for his life, he having survived her; and as to half of it, his life estate was enlarged substantially into a fee, whether he exercised the power of disposition or not; for his failure to exercise the power was to be attended with no consequence except the succession of "his heirs, executors and assigns." As to the other half, Mrs. Miller had a power of disposition which she forbore to exercise; and, by the terms of the settlement, that half was, at her death, to "vest in, and belong to, such person or persons as would be her heirs agreeable to the laws of this state." She died in 1851, and at that time a wife had, by the laws of this state, no heir but her husband: 4 *Georgia Reports*, 377, 541; 23 *Ibid.*, 142; 25 *Ibid.*, 480, 622; 29 *Ibid.*, 733. The result is that Miller acquired the whole of her third of the property—half by survivorship and half as her heir-at-law.

3. The provisions of the settlement touching income are as follows: "Provided, nevertheless, and it is expressly understood and agreed upon between the parties to this instrument, that the *mesne* profits and labor of the said property, when divided, both of land and negroes, together with the increase of said negroes, shall and may be used and taken by the said Baldwin B. Miller, for the joint use, benefit and behoof of him, the said Baldwin B. Miller, and the said Rosina S. Morrison, during their joint lives, provided they shall live together; but if they should disagree and separate, then the aforesaid property shall remain with the said James Anderson, in trust for the sole use and benefit of the said Rosina S. Morrison." The terms "when divided," have reference to a division of the Morrison estate among the distributees of that estate, which seems not to have taken place anterior to the execution of this instrument. The terms "together with the increase of said negroes," are used in a way to suggest a possible doubt whether the increase themselves, or only their labor, passed with the *mesne* profits; but we think the latter was the real intention. It is not at all probable that a woman, herself a mother, nor indeed any other person, would, in this wholesale way, fasten a different title upon negro children not yet born, from that by which the mothers bearing them were to be held. The word "increase," wherever used in the settlement, means natural increase; and such increase, in the case of slaves, would go to enlarge the *corpus;* and we think it was not the intention of the parties here to vary that general rule. The terms "during their joint lives," are also open to some little question. As here used, do they limit the estate in *mesne* profits and labor; or do they simply define a period of time—the time within which the profits and labor to be appropriated are to accrue? We think they fulfil the latter office, and that it was the purpose of the instrument to dispose forever of the income accruing during the joint lives of the consorts; and not merely to create an estate for their joint lives in what accrued during their joint lives, thus doubling the application of the terms. We reach now the final question

under this head: To whom is this income, that is, the *mesne* profits and labor, disposed of? It is to be "used and taken" by Miller "for the joint use, benefit and behoof" of himself and Mrs. Miller, "provied they shall live together; but if they should disagree and separate, then the aforesaid property shall remain with the said James Anderson in trust for the sole use and benefit of the said Rosina S. Morrison," (Mrs. Miller.) Miller is to "use and take" it. Perhaps the only right of Mrs. Miller, (unless in case of separation,) was to have out of it what she needed for her support ard comfort as his wife. But if it were otherwise; if they were strictly tenants in common, there is no disposition of her share of the accumulation from it; so that upon her death, he became entitled thereto as husband or heir-at-law. It is not quite certain that his marital rights would not attach upon such accumulations pending her life, for it will be observed that he, and not the trustee, was to "take" the income. It was not saddled with the trust proper, as was the *corpus;* and the use declared was not a separate use for the wife, but a joint use for both. In the event of separation, however, the trust proper did fasten on the income; and this brings us to a consideration of the object and effect of the terms last above quoted: "but if they should disagree and separate, then the aforesaid property shall remain with the said James Anderson, in trust for the sole use and benefit of the said Rosina S. Morrison." We think this clause was inserted only for the purpose of controlling income, if separation should occur. The words "aforesaid property" mean the *corpus;* the possession of which was, doubtless, intended to be in Miller up to a separation, but no longer. Whenever a separation took place, if at all, the trustee was to assume possession, and hold for the sole benefit of Mrs. Miller until some other provision took effect in consequence of the death of one of the consorts. In this manner, Mrs. Miller would be sole recipient of the income during the balance of their joint lives. It will be noticed that this clause is not in itself a complete sentence, but is part of that touching income. It need not be construed to vary any provision as to

ownership of the *corpus;* and it is thus that we reconcile it with what has been advanced on that subject under the first head. It relates to income, in the contingency mentioned, and to the means of securing it, and to nothing else. While we think that Miller became absolute owner of all unconsumed income that accrued up to Mrs. Miller's death, we discover no ground for extending his right to more than one-third of the income that accrued afterwards. From the time of her death, he was a tenant in common with the two children of the marriage, in both *corpus* and future profits.

4. Although it results from what has been said, that, in our opinion, the two Morrison children have no right to any of the property in controversy, still, we are pretty sure that under the circumstances, none of the parties to the original bill were improper parties. The construction of a very peculiar and dubious instrument was to take place, and in the *judgment of construction* all these parties had an interest. It was right to afford all an opportunity of being heard, and it was economical to concentrate the hearing in a single suit. If any of the defendants had wanted to shun controversy, the resource of disclaimer was open to them ; and even if they had not defended that far, but had made default, the chancellor could and would have protected against cost such as proved to be legally disinterested in the property, and who asserted no interest. The question of cost is subject to discretion.

Without concurring with the judge below in all his reasons for retaining the original bill, we affirm his judgment overruling the demurrer to the same ; and reverse his judgment as to the cross-bill. Let the cross-bill be dismissed.