# Humes *v.* Scruggs.

## *Petition by Widow for Assignment of Dower.*

1. *Dower; allotment by metes and bounds.*—Ordinarily, the Probate Court is the proper forum in which a petition by a widow for an allotment of her dower should be filed; and the admitted fact that "the dwelling-house on said land, with the ground covered by its yards, is worth three-fourths of the value of the entire property," without more, does not show that dower can not be assigned by metes and bounds, nor oust that court of its jurisdiction.

2. *Claim of dower; when set up by cross bill, or barred.*—The assignee in bankruptcy of the husband having filed a bill in equity against the wife, to set aside, as constructively fraudulent, a conveyance of lands by the husband to her; the wife can not, by cross bill, set up a claim to dower in the lands; consequently, a decree in favor of the assignee would not bar a subsequent claim of dower by her.

3. *Who is alienee of husband.*—The assignee in bankruptcy of the husband is not an *alienee* within the statute (Code, §2251) which requires proceedings for an assignment of dower, "where the rights of an alienee of the husband are involved," to be commenced within three years after the death of the husband; and a purchaser from the assignee, at a sale made under a decree of the court in bankruptcy, does not become an alienee until he receives a deed.

4. *Merger of dower in fee, under conveyance afterwards avoided.*—When a less estate is merged in a greater, the latter must be assumed as valid and continuing, and there can be no merger where it has been avoided; hence, the widow's right of dower is not merged in an absolute conveyance to her by her husband in his life-time, which was afterwards declared constructively fraudulent as against his creditors, and was set aside at the instance of the parties who contest her right to dower.

APPEAL from the Probate Court of Madison.

In the matter of the petition of Mrs. Narcissa Scruggs, the widow of John W. Scruggs, deceased, for an assignment of dower in certain real estate in said county, of which her said husband died seized and possessed. The petition was filed on the 8th November, 1877. The administrator and heirs at law of said John W. Scruggs, and Milton Humes, as the assignee in bankruptcy of his estate, were made defendants to the petition; and Mrs. Sarah C. Robinson, the widow of James Robinson, was also joined as a defendant, under an allegation that said assignee in bankruptcy had executed to her a conveyance of the premises. The petition was contested by Mrs. Robinson and Humes, who demurred to it, assigning as causes of demurrer—1st, that it showed on its face that the claim of dower was barred by the statute of limitations of three years; 2d, that it did not aver or show that dower could be allotted by metes and bounds; and, 3d, that it did not contain a definite and intelligible description

VOL. LXIV.

of the lands in which dower was sought. The court overruled the demurrer, and the contestants then filed separate answers to the petition; in which they alleged and insisted on the following grounds as barring the right of dower : 1st, that the petitioner had, at the death of her husband, a statutory separate estate, of greater value than her dower interest in her husband's lands; 2d, that said James Robinson, at the time of his death, "had a lien on said lands for the satisfaction of a debt of $22,000," and his heirs, devisee, and personal representative ought to have been made parties; 3d, that the petitioner's right of dower was merged in an absolute conveyance of the lands, which her husband had executed to her on the 14th May, 1866, and which she still held and retained, and asserted title to said lands under it; 4th, that she was estopped from setting up any right of dower in the lands, if any she ever had, because she failed to assert it, as she might have done, in a certain suit brought against her by said Humes, as assignee in bankruptcy of her husband, on the equity side of the Circuit Court of the United States at Huntsville, hereafter referred to; 5th, that Humes, as assignee in bankruptcy, was an alienee of the husband, and the petition was not filed within three years after the death of the husband; 6th, "that dower in said lands can not be assigned by metes and bounds, because the houses on the land are worth so much more than the other lands that no assignment by metes and bounds can be made;" 7th, that the petitioner is estopped from claiming dower in the lands, by her husband's conveyance of them to her, and her acceptance of the same; 8th, that the lands in which dower is claimed, "have been condemned to the satisfaction of the debts due and owing by said John W. Scruggs, as a bankrupt, at the suit of said Humes as his assignee in bankruptcy, in the Circuit Court of the United States." Humes also denied that John W. Scruggs was seized and possessed of the lands at the time of his death, and alleged that the petitioner, though in actual occupation of the premises, had no legal interest in them whatever, and was not legally entitled to the possession.

The cause coming on for hearing, as the bill of exceptions states, "on said petition and answers, the following facts were admitted as true, and as duly proved, subject only to objection for want of legal competency: 1. That the petitioner and said John W. Scruggs were married, in 1843, in Alabama, where they ever afterwards resided. 2. That on the 13th October, 1853, said Scruggs became seized and possessed, in fee, of a tract of land in said county, containing one hundred and thirty acres, and composed of all of the

south-west quarter of section 35, township 3, range one (1) west, that lies north of the Huntsville and Athens road, and nine (9) and 81–100 acres in the south-east quarter of said section. 3. That afterwards, prior to the 14th May, 1866, said Scruggs sold off parts of said land to James H. Scruggs, leaving the balance of said lands, out of which dower is now claimed, bounded on the north," &c., describing the boundaries on the four sides : "4. That on the 14th May, 1866, said Scruggs executed a deed of conveyance of said balance of said lands to his wife, the petitioner in this case. 5. That on the 1st May, 1867, said Scruggs conveyed to his said wife all his estate, title and interest, in and to a lot of land in Corinth, Mississippi, then occupied by the hotel known as the 'Scruggs House,' with the appurtenances, for the consideration of $25,000, recited to have been paid to him by her. 6. That the interest of said Scruggs in said Corinth property was the right of a perpetual lease of it, at an annual rent of $250 to the Memphis and Charleston Railroad Company ; Scruggs to keep a first-rate eating-house, and the company to use it as an eating-house ; and upon either party becoming dissatisfied, possession to be surrendered to the company, and Scruggs to be paid the value of the improvements," as stipulated in a written agreement between the parties, a copy of which is made an exhibit. "7. That on the 3d July, 1868, said John W. Scruggs was duly adjudged a bankrupt on his own petition," by the District Court of the United States at Huntsville ; and Milton Humes was appointed the assignee of his estate, and a conveyance was executed to him by the bankrupt. 8. That on the 11th August, 1870, said Humes, as assignee, filed a bill in equity in the United States District Court at Huntsville, against said Scruggs and wife, "to set aside said deed of May 14, 1866, as fraudulent against creditors, and to recover said lands therein attempted to be conveyed ;" and Scruggs having died in August, 1871, pending that suit, his death was suggested at the November term, 1871. 9. "Mrs. Scruggs, the petitioner, defended said suit of Humes, as the grantee in fee of said lands under said deed of May 14, 1866, and the confirmation and ratification thereof by decree of the Chancery Court of said county of Madison, of date December 7th, 1867, but did not in her answer, or by cross bill to said suit, claim her right to dower in said property, out of which she now claims dower. At the November term of said court, 1871, a decree was rendered in said cause, dismissing complainant's bill, with costs ; and from this decree said Humes appealed to the Supreme Court of the United States ; all of which proceedings are shown by a copy of the record of said

[Humes v. Scruggs.]

cause, hereto annexed, and made a part of this agreed statement. Said decree was reversed by the Supreme Court of the United States, and, under its mandate, a decree was rendered for said lands, in favor of said assignee, by the Circuit Court of the United States at Huntsville, on"— ; a copy of the opinion of the Supreme Court of the United States being appended as an exhibit. 10. "After May 1, 1868, petitioner offered to surrender possession of the Corinth property to the said Memphis and Charleston Railroad Company, and demanded payment of the value of the improvements ; and it was referred to arbitrators to ascertain and determine the value of the improvements ; and the arbitrators awarded to Mrs. Scruggs, the petitioner, the sum of $31,660.66, against the company, as the value of said improvements, and the measure of her rights under said agreement;" a copy of the award being appended as an exhibit to the agreed statement of facts. "Said award was resisted by the railroad company, and was enforced by decree of the proper Chancery Court of Mississippi, affirmed by decree and judgment of the Supreme Court of said State. Of said award, Mrs. Scruggs received about $21,000 ; but she has never received the balance of said award, and she was required by the decree of the United States District Court for the Northern District of Mississippi to pay back $4,000 of the amount she thus received, and decided that the railroad owed no more, allowing railroad balance as off-sets for rent which accrued after said award." 11. "Scruggs died on the 25th August, 1871." 12. "The said lands, out of which dower is claimed, were worth on the 14th May, 1866, and on the 30th June, 1868, and on the date of the filing of said petition in bankruptcy by said Scruggs, $12,000, and are now worth, and have been since the death of said Scruggs, $10,000. 13. "The dwelling-house on said land, with the grounds covered by its yards, are worth three-fourths of the value of the entire property." 14. "The said John W. Scruggs left, at his death, no property, real, personal, or mixed."

On the agreed facts, the court held that the petitioner was entitled to dower, and rendered a decree for its allotment by commissioners ;· to which ruling and decree the contestants reserved an exception, and they now assign it as error, together with the overruling of their demurrers to the petition.

D. P. LEWIS, HUMES & GORDON, and F. P. WARD, for appellants. (No briefs on file.)

L. P. WALKER, and BRANDON & JONES, contra.

MANNING, J.—Appellee, Narcissa Scruggs, in November, 1877, filed her petition in the Probate Court of Madison county, for the assignment to her of dower of a tract of about fifty-eight acres of land, adjoining Huntsville in said county; on which, and in the dwelling-house thereon, her late husband, John W. Scruggs, most usually resided, before, and at the time of his death; which he had purchased of one Samuel Ragland, in the year 1850, and was seised of in fee during the marriage; and which had been and was occupied by petitioner, his widow, from the time of his death in August, 1871, to and at the time of the filing of her petition. All persons interested were made parties to the cause; and after a contestation in the Probate Court, a decree was rendered, declaring petitioner entitled to dower of the premises, and ordering that the sheriff summon five freeholders, as the statute directs, to allot and set it off "by metes and bounds" to the amount of one-third, "having regard to the improvements, and quality of the land, as well as the quantity of dower." From which decree contestants appealed to this court. Of the objections here insisted on for appellant, the first, in proper order, is that which denies jurisdiction in the Probate Court to render a decree in the cause.

It was always a favorite policy of the law, that a widow should have her dower without delay or expense; in the language of *Magna Charta, statim, et sine difficultate.* "Nor shall she," continues that venerable document, "give any thing for her dower. * * * And she may remain in her husband's house, forty days after his death, within which time her dower shall be assigned."—1 Scribner on Dower, 11. Reenforcing this ancient policy, our statutes enact: "The widow may retain possession of the dwelling-house where her husband most usually resided next before his death, with the offices and buildings appurtenant thereto, and the plantation connected therewith, until her dower is assigned her, free from rent."—Code of 1876, § 2238. And to facilitate this assignment, by section 2239 it is enacted: "When the dower interest can be assigned by metes and bounds, the widow, heir, or personal representative of the husband, may petition the judge of probate, of the county where the land in which the dower is claimed, or any portion thereof lies, to cause assignment of dower to be made." Directions are then given for the conduct of the proceedings in the Probate Court, to a decree, and for the execution of this decree by the sheriff, with the aid of five commissioners to be summoned for the purpose.

Ordinarily, therefore, the Probate Court—the court to which belongs jurisdiction over the administration of estates

of deceased persons—is the proper, regular, legal forum" to cause assignment of dower to be made;" and, inasmuch as dower is demanded of realty only, this realty, especially when it consists of a tract of land, is presumably, and *prima facie*, so divisible, that one-third thereof may be set off "by metes and bounds." Hence, the next section (2240), prescribing what the petition shall contain, does not require that, besides describing the land, it shall further allege that the dower claimed can be set off by metes and bounds. Nor has it been the usual practice to make such an allegation.

According, however, to section 2248, "when land, out of which dower is demanded, has been aliened by the husband, and, from improvements made by the alienee, or from any other cause, an assignment of dower by metes and bounds would be unjust, the judge of probate must decline jurisdiction, and application must be made to the Court of Chancery." And appellant, assignee in bankruptcy of said John W. Scruggs (who three or four years before his death was, upon his petition, adjudged a bankrupt), insists that this is a case of which jurisdiction should have been declined; because the statement of facts agreed on, after describing the land and its situation, and setting forth that the entire property was worth $10,000, proceeds to say : "The dwelling-house on said land, with the *ground covered by its yards,* are [is] worth three-fourths of the value of the entire property." But, how does this evidence show that dower could not be assigned by metes and bounds? In the first place, it does not appear what the extent of the ground is that was "covered by yards." Perhaps, so much of it may be taken from one part, or added to another, as that the required one-third can be easily obtained. Besides, the house itself may be susceptible of convenient division by metes and bounds. Mr. Scribner, in the 2d volume of his work on Dower, in a chapter treating of assignment of dower by metes and bounds, says: "It has been held, that when the subject of the assignment is a dwelling-house, * * * the whole of particular rooms may be set off for dower." And several instances are referred to by that author, in which "particular rooms in the house were assigned to the widow, with the right of using the stairways, halls, &c., so as to afford ingress and egress for the enjoyment of the rooms."—Ch. 21, p. 546. It seems that only the widow herself, if she may, can object to such an assignment. For, when the property admits of an assignment in severalty, "the endowment must be of parcel of the lands and tenements themselves."—Volume 2, pp. 74–5.

The objections taken to the jurisdiction, were properly overruled, as the case is now presented, and was, in the Probate Court.

It is also urged that petitioner's claim of dower must be regarded as *res judicata*, by the result of a suit of appellant Humes, in the District Court of the United States at Huntsville, decided in his favor as assignee in bankruptcy of petitioner's husband, by the Supreme Court of the United States, in January, 1877, reversing the decree therein of said District Court. This suit was brought to have a conveyance of the property to petitioner declared void. Ever since 1866, she has held and claimed the land in question as her own, for her sole and separate use, by virtue of a conveyance of the same and other property, in that year, from her husband John W. Scruggs; and a decree confirming her title thereto had been obtained in a suit brought by her against said John W., in the Chancery Court of the State for Madison county. The consideration, or a part of it, for this transfer to her, appears to have been money of the separate estate of petitioner, said Narcissa, which her husband had in previous years received and used, and with some of which, it was contended, he had bought valuable lands in Arkansas, for his wife, as she was informed, though the title thereto had been taken in his own name and he had received and used the proceeds thereof. The lower Federal court, having the jurisdiction of a Circuit Court, decided the cause in her favor. In reversing its decree, the Supreme Court of the United States said of the consideration just mentioned: "If the money which a married woman might have had secured to her own use, is allowed to go into the business of her husband, and be mixed with his property, and is applied to the purchase of real estate for his advantage, or for giving him credit in his business, and is thus used for a series of years, there being no specific agreement when the same is purchased that such real estate shall be the property of the wife, the same becomes the property of the husband for the purpose of paying his debts." In which view of the case, the conveyance would be only constructively fraudulent so far as Mrs. Scruggs herself was concerned.

There were reasons, therefore, why she, the wife, might in good faith believe her title to be both meritorious and legal, a title in virtue of which, she could justifiably insist upon holding and occupying the property, and invoke the judgment of the courts in favor of her right to do so. Defending the suit upon a supposed good title in herself by a conveyance and assurances which she was challenged to maintain, it would be inconsistent with such a contestation,

to set up only a right of dower in the premises, for this would be an implicit admission that the fee in them was not in her at the time of her husband's death. A cross-bill claiming a right to, and praying an assignment of dower, would therefore have been contradictory of the defense made by her answer, instead of being in aid of it. So that the question of dower was, not only not in issue, but [could not properly have been put in issue, in that cause. Besides, that suit—a suit in a Chancery Court—was brought, and the pleadings all filed, and a large part of the evidence taken, in the life time of the husband, John W. Scruggs—when his wife's right of dower was, of course, not yet consummate; and the decree therein, dismissing plaintiff's bill and leaving her title in full force, was rendered within less than three months after her husband's death.

Her right to the dower claimed is not, therefore, *res judicata*. Is it barred, as contended, by virtue of section 2251 (1643) of the Code of 1876? It says: "All proceedings or suits for dower, when the claim or rights of an alienee of the husband, or any one claiming under such alienee, are involved in such suits or proceedings, must be commenced within three years after the death of the husband, and not after "

It is contended that the assignee of a person adjudged upon his own petition to be a bankrupt, is an alienee of such person within the meaning of this statute. We can not think so. The assignee of a bankrupt's estate stands in relation to it, very like an administrator towards the estate of a decedent. The appointment of each is made by a court, and they are both alike removable by it. On each the title of the former owner is devolved by the law; and each is required, out of the property thus committed to him, to pay the debts of the former owner, and if there be a surplus to return it, in the case of a bankrupt, if he be living, to him, or in the case of the deceased person, to the next of kin. There are some differences, it is true. Upon the assignee is cast all the title the bankrupt had, as well in his lands as in his personalty and *choses in action;* while the administrator acquires title only to the personalty and *choses in action,* but not in the land; though power is conferred on him to subject this also to payment of debts when necessary. And the assignee, moreover, may, if there has been a fraudulent transfer of the bankrupt's property, have it set aside, while the administrator has not such authority.

In each case, however, the property undisposed of by the administrator or assignee, remains of the estate which he is appointed to administer, and is recognized and kept as such in the custody of the law and control of the courts to whose

charge the law commits it. It ceases to be of such estate, only when by an actual sale the ownership of any part is transferred to a purchaser; and the assignee having no beneficial interest therein, can not be considered "an alienee of the husband," within the meaning of this section of the Code.

"It is a well established doctrine," said Mr. Justice STORY, "that (except in cases of fraud) assignees in bankruptcy take only such rights and interests as the bankrupt himself had, and could himself claim and assert at the time of his bankruptcy."—*Mitchell v. Winslow*, 2 Story, 637. "Even where a complete title vests in them," said Sir WM. GRANT, M. R., "and there is no notice of any equity affecting it, they take subject to what ever equity the bankrupt was liable to. * * * Indeed, a distinction has been constantly taken between them and a particular assignee for a valuable consideration; and the former are placed in the same class as voluntary assignees and *personal representatives*."—*Mitford v. Mitford*, 9 Ves. 87, 100. See, also, *Smith v. Perry*, 56 Ala. 268.

We hold, therefore, that the title which was in the assignee in bankruptcy, is not such an one as would be protected against the widow's right to dower, when this is not claimed by legal proceedings before the lapse of three years.

In regard to the claim of appellant, Sarah C. Robinson, executrix and sole devisee of James Robinson, deceased, this much appears by the record: In the bill filed by Humes as assignee, in the District Court of the United States, in August, 1870, against John W. Scruggs (since dead) and his wife, Narcissa, and said Robinson, it is alleged that the latter, one among many large creditors of said John W., had in 1867 brought suit in the State Chancery Court at Huntsville, Alabama, against said John W. and Narcissa, afterwards in 1870, revived against said Humes, as assignee in bankruptcy of said John W., to set aside the conveyance of the latter to his wife, as fraudulent and void as to said Robinson: by which suit, then pending, it was supposed a lien was created on the land in controversy. What had been done further in this suit, whether it has been determined or not, is no where disclosed. But very singularly, in the other suit which was brought by Humes, as assignee, in the Federal District Court, and in which Robinson, though a defendant, did not answer, much less file a cross-bill, or otherwise ask any relief, that court, after decreeing, conformably to the decision of the Supreme Court, the deed from Scruggs to his wife fraudulent, and the title to be in Humes, as assignee, declared a lien on all the property," for the amount thereof," in Robinson's favor. This was in November, 1877; and it seems that

in consequence of this ruling, but whether in virtue of any sale and purchase does not appear, a deed of the land in controversy was made by Humes, the assignee, to said Sarah C. Robinson: and this is her title. She did not become an alienee of the property until 1877; and her title not having accrued three years before the petition in this cause was filed, the three years statute creates no bar in her favor.

It is insisted further, however, that petitioner, Mrs. Scruggs, has no right to dower of this land, because by the convey-ance of her husband to her, which, though voidable and decreed to be void as to these appellants, was valid between the parties to it, her right as dowress became merged in the fee thus transferred to her, and was extinguished. But the contention, in this cause, is between petitioner and appel-lants; and in respect of the latter it has been decided, that the conveyance to the petitioner is inoperative and null. In favor of contestants, the title must be regarded as having remained in John W. Scruggs until it was devolved on his assignee in bankruptcy. This is the basis on which alone the claims of appellants are founded: and they can not be heard to make demands inconsistent with and contradictory of the fundamental propositions on which the case in their favor must rest. As was said in the similar case of *Mallory v. Horan* (49 N. Y. 119): "When a creditor of the husband pursues him to judgment, and attacks as fraudulent, and sets aside as void, the deed from him, joining in which the wife has released her right of dower, he does not connect himself with the title which that deed has created, and with which the release of dower is connected. He sets up the title of the husband as it existed before the fraudulent conveyance, and stands in hostility to the title which it" was intended to give. That is the attitude of appellants in the present in-stance. And in reference to a case exactly like the present (*Richardson v. Wyman*, 62 Maine, 280), the Supreme Court of Maine said: "The deed to the demandant, upon which the tenant relies to defeat her dower, was fraudulent and void as to creditors; and he, being a creditor, has avoided it. The deed to demandant, releasing to her the fee, being avoid-ed for fraud, the tenant would set it up as an existing estate to bar the dower to which she would otherwise be entitled. * * * Reduced to its ultimate elements, the proposition is, that a deed fraudulent and void as to the tenant, and which has been avoided by him, may, after such avoidance, be set up as a valid and existing deed, for the purpose of defeating and destroying a right to which the defendant would unquestionably have been entitled had no such deed been executed. When a lesser estate is merged in a greater,

[McBrayer v. Cariker.]

the greater estate must be assumed as valid and continuing. There can be no merger when the estates are successive, and not concurrent, nor where the greater estate is void and has been avoided."—*Richardson v. Wyman*, 62 Maine, 280 ; *Ridgway v. Masting*, 23 Ohio St. 294; *McLeery v. McLeery*, 65 Me. 172.

In respect of the objection that petitioner had a separate estate of her own, by which, according to section 2715 (2380) of the Code, she is excluded from dower of her husband's lands, it appears,—1st, that the property was not of the *statutory* separate estate, to which said section relates ; and secondly, that the Federal District Court, in the suit of Humes, assignee, against petitioner, by its decree declared her title to said property void against him and the creditors of her insolvent husband. The objection referred to is not therefore well taken.

Let the decree of the Probate Court be affirmed.

BRICKELL, C. J., not sitting.