MARY A. BURGE *et al.*, plaintiffs in error, *vs.* WILLIAM T. BURGE, administrator, defendant in error.

1. Equity will reform a marriage contract, after the death of the husband, at the instance of his child by a former marriage, if it is made plainly to appear that at the time of the second marriage, it was agreed between the parties that the property of each should be settled on its owner for life, with remainder to the children of such owner by a former marriage, but the draftsman of the contract omitted to insert the provision as to the husband's property, and both parties signed under the impression that it was inserted.

2. Ignorance of the omission on the part of the husband, with knowledge of it on the part of the wife, and concealment of it by her from him at the time of signing the contract, would be a fraud upon him, and on this ground equity would reform the contract.

3. If the husband is informed, after the marriage, of the omission, and says he will rectify it by his will, but fails to do so, though he lives for twenty months thereafter, he cannot be said to have acquiesced in the instrument as written, so as to prevent equity from reforming it, especially where there is no evidence of acquiescence on the part of the remainder man, who was a minor at the death of the husband.

4. It is not error in the Court to say to the jury that in common parlance the word "heirs" means children, where he gives the legal meaning at the same time.

5. The verdict is sufficiently sustained by the evidence and not contrary to law.

Reformation of Contracts. Before E. N. BROYLES Esq., Judge *pro hac vice.* Polk Superior Court. February Term, 1871.

The facts are sufficiently stated in the opinion.

UNDERWOOD & ROWELL; C. D. FORSYTH; R. FOUCHE, for plaintiffs in error.

WARREN AKIN, for defendant.

MONTGOMERY, Judge.

This was a bill filed by the defendant in error, as the administrator of Dalton Burge, against the plaintiff in error, as the widow of the intestate, and John W. McGhee and his wife, Susan Z. McGhee, the son-in-law and daughter of the intestate, the daughter being also the only child by a former marriage. The widow had also been twice married, and had children by her first marriage. There was no child by the marriage of intestate with his last wife.

The subject matter of controversy was the property of intestate, his widow claiming one-half as an heir-at-law, his daughter and her husband claiming the whole under a marriage settlement, entered into between the intestate and his surviving wife, at the time of their marriage; the daughter and her husband alleging that, at the time of said marriage, it was agreed between Dalton Burge, the intestate, and Mrs. Mary H. Lattimer, his intended wife, that the property of each should be secured to the children of each by their former marriages, on the death of the owner; that the settlement was drawn up, and did so secure Mrs. Lattimer's (afterwards Mrs. Burge) property, but, through fraud or mistake, failed to secure Dalton Burge's property as intended. The widow insisted that the contract was drawn as intended. The contract was drawn by Abner Darden, two of whose children had married two of the widow's children by her first marriage. Darden swore positively that the marriage contract, as drawn, was in exact compliance with the instructions received from the parties. The widow swore equally positively that the contract was in accordance with

the intention of the parties; that there was no omission, and that Burge frequently expressed himself satisfied with it, after their marriage; that she never had said anything to any one, going to show that Burge and herself had intended to make a contract, and did make it, as claimed by Burge's daughter.

On the other hand, there are no less than eight witnesses, to-wit: Treadway, Simeon Hamil (the Justice of the Peace who witnessed the contract), Mrs. McGhee, P. H. Michael, Matilda Haney (who negotiated the terms of the settlement with Mrs. Lattimer, at the instance of Dalton Burge), James Sanders, J. D. Thompson and Radford Ellis, whose testimony, taken together, show overwhelmingly that the parties did intend to make the contract, as alleged, and many of whom flatly contradict the widow's statements, as to her own sayings about the matter. She is also contradicted, on another points, by a Mrs. Lyon, another witness, the widow testifying that she did not know Mrs. Lyon, and had had no conversations with her about her marriage settlement; Mrs. Lyon swearing positively to certain conversations between herself and the widow about the marriage settlement.

The evidence shows that either both parties signed under the supposition that the contract was drawn as had been agreed upon, or that Mrs. Lattimer knew of the omission, and concealed it from Burge. She testifies that she knew the contents of the marriage contract, at the time of the marriage, and knew them by reading it. The Justice of the Peace who witnessed the contract testifies. that Burge called for him to go to Mrs. Latimer's house with him, and witness the contract, and that, on the way there, Burge said the contract was, as now alleged by his daughter it should have been drawn; that they found Judge Darden at Mrs. Lattimer's, and that "Judge Darden then produced an instrument of writing, saying that it was a marriage contract between Dalton Burge and Mrs. Lattimer, and laid it on a bureau, and Dalton Burge and Mrs. Lattimer signed it, and

Burge *et al. vs.* Burge.

then I signed it, as a Justice of the Peace. I did not hear Mrs. Lattimer say one word, in regard to the contract, and *did not hear the contract read;* and knew nothing of its contents, except what Dalton Burge told me on the way to Mrs. Lattimer's." He says nothing of its being handed to Dalton Burge to read—indeed, its contents were so variant from what Burge had just told the witness, that it may fairly be presumed from that (and the testimony of the witness, as to the manner in which it was signed) that Burge signed without reading the contract. If Mrs. Latimer read it, as she says she did, it was probably before the arrival of Burge and the witness; and her knowledge of the variance from the agreement, and the concealment of it from Burge, was a fraud upon him if the agreement was as alleged. As the jury have so found, this Court must assume, under the evidence that sustains the finding, that the finding is correct.

Some of the witnesses testify that Mrs. Burge told them that her husband had supposed, up to about twenty months before his death, that the contract was drawn in accordance with their agreement; at which time she informed him of his mistake, and he said he would rectify it by making a will. Counsel insist that, as he failed to make a will, there was an acquiescence in the contract as it stood, even supposing it did not express the original intention of the parties. There was no acquiescence on the part of Burge's daughter, the party chiefly interested, who was a minor at the death of her father.

The Court, in its charge, told the jury that, in common parlance, the word " heirs " meant children, but, at the same time, gave them the legal definition of the word. This, also, is alleged as error. The assignments of error contain the usual allegations that the verdict is contrary to law and evidence.

Judgment affirmed.