## JACKSON *et al. vs.* JOHNSON *et al.*

[JACKSON, Chief Justice, being disqualified in this case, Judge UNDERWOOD, of the Rome circuit, was appointed to preside in his stead.]

1. Where suit was brought in this state on an administrator's bond, the original of which was lodged in the probate court of Chambers county, Alabama, and where the plaintiffs were restrained by injunction issued in Alabama from obtaining either the original or a certified copy, secondary evidence was admissible in the Georgia litigation.

(*a.*) A transcript from the records of the Alabama court of probate, obtained before the date of the injunction, containing a copy of the bond, was the best evidence attainable under the facts of the case.

(*b.*) By the statute of Alabama " copies of official bonds or other instruments, or papers required to be kept by any officer of this state, and transcripts from the books and proceedings required to be kept by any sworn officer of this state, are presumptive evidence in any

civil cause, and have the same effect as if the original were produced and proved, upon the certificate of the custodian thereof that it is a true copy of the original." Therefore the certified transcript containing a copy of the bond was admissible in Georgia, although a plea of *non est factum* had been filed.

CRAWFORD, Justice, dissenting.

2. The copy of the bond so certified having been introduced in evidence, without further proof of execution, a non-suit was properly refused, both because the *lex loci* of the contract governs, and also because the act of congress declares that the transcript shall have the same faith and credit in every state as in the state from which it came.

3. One question in a case being whether an administrator's bond was executed for $150,000.00 or $150.00, it was admissible to show as against one of the securities that he knew at the time the value of the estate, and that a bond in double that amount was required.

4. The verdict in this case was not contrary to law, evidence, or the charge of the court.

5. The law of the case was substantially given in charge, and there was no error in refusing to give the requests of counsel which were not given.

6. An auditor cannot be made a witness for the purpose of adding to or subtracting from his report. If the phraseology of the report is doubtful in its meaning. he may be heard to explain it.

7. To a suit on a bond of $150,000.00, a plea having been interposed that at the time of its execution it was only for $150.00, and that the word "thousand" was subsequently added by the payee. it is competent to prove that the intention of all parties was to make the bond for $150,000.00.

(*a.*) If all parties intended to make a bond for $150,000.00, and such was, in fact, the contract, but by an accidental clerical omission it was written " one hundred and fifty dollars," that the payee, immediately after ˉthe execution of the bond, discovered the omission and inserted the word " thousand," would not invalidate the bond, but relief against such a mistake may be had in a court of law or equity.

(*b.*) Where the sureties were informed of the alteration shortly after it was made, and permitted the administration to proceed thereunder for a number of years without objection, and the estate to be managed and disposed of by the administrator, the jury were authorized in inferring acquiescence in the change.

(*c.*) Even though a non-suit may have been proper at the time of

Jackson *et al. vs.* Johnson *et al.*

motion being made therefor, yet if after its refusal the case proceed, and the defect be supplied by testimony, the refusal will not require a new trial.

Evidence. Records. Bonds. Administrators and Executors. Verdict. Non-suit. Charge of Court. Contracts. Before Judge HARRIS. Troup Superior Court. May Term, 1881.

This was an action by plaintiffs against W. S. Jackson, administrator on the estate of H. F. Erwin, deceased, as principal, and George Huguley, Reuben Jones and W. H. Huguley as securities upon the administration bond of Jackson, which was on its face for $150,000.00.

The declaration alleged a *devastavit* by Jackson, and that there was due plaintiffs $1,796.27, with interest from the 24th day of May, 1866, at 8 per cent.; that at the May term of Troup superior court they had obtained judgment against said Jackson as principal for this amount, and alleged non-payment.

The securities filed pleas (1st) of general issue (2d), *non est factum*, and (3d) that the bond executed by them was for only $150 00, and after its execution the same was changed by the judge of probate, who was the payee, to $150,000.00 without their knowledge or consent.

The case was referred to an auditor, and exceptions were filed to his report. After the first report the auditor added a supplemental report that, in addition to the amount found against the defendant, Jackson, he intended for him to deliver up all assets not already accounted for, including certain notes, *fi. fas.*, etc.

The following evidence was introduced by the plaintiffs:

(1.) The decree against Jackson, the administrator, rendered at the May term, 1874, described in plaintiffs' declaration.

(2.) Certified copy of application of Jackson for administration, and bond given as administrator. This was admitted over objection of defendants' counsel.

(3.) Plaintiffs also introduced the record of the suit against Jackson, and the *fi. fa.* founded thereon, together with evidence concerning the alleged *devastavit*, amounts, etc., not material here. Also testimony of Mrs. Johnson and others, showing that in 1868 Jones sought to be relieved from the bond, and that George Huguley was concerned in handling a part of the estate, and cautioned Jackson to be careful, as he (Huguley) had to be responsible.

Plaintiffs closed, and defendants moved for a non-suit, which was refused.

Defendants offered to prove by the auditor to what assets he referred in his supplemental report. The testimony was rejected.

Defendants introduced the following testimony:

(1.) Sections of the Code of Alabama:

§2016. All letters testamentary, or of administration, general or special, and the bonds given by executors or administrators, must be recorded by the probate judge, and transcripts thereof, duly certified, are evidence in all the courts of this state to the same extent as if the originals were produced.

§2682. All written instruments, the foundation of the suit purporting to be signed by the defendant, his partner, agent, or attorney in fact, must be received in evidence without proof of the execution, unless the execution thereof is denied by plea, verified by affidavit, and every assignment of such instrument on which suit is brought in the name of the assignee must be deemed genuine, unless impeached in like manner, when, in either case, the burden of proof is cast upon the plaintiff.

§2013. The judge of probate is liable for any neglect or omission in not taking, or for taking insufficient, bond from any executor or administrator; and any person injured thereby may sustain any action against such officer and his securities, and recover according to the injury proved.

Also other sections not material to the points decided here.

(2.) An exemplification of the records of the probate court of Chambers county, Alabama, showing disposition of assets, etc.

(3.) Reuben Jones, the substance of whose testimony

was that the bond was for $150.00 when he signed it, and that he was led to do so on account of its smallness; that he knew it was too small, and thought Erwin's estate was worth some $40,000.00 or $50,000.00, but that he did not know of any alteration of the bond until 1874 or 1875; that in 1866 he sought to be relieved from this and another bond on which he was security, because he expected to move from Alabama to Georgia, and that in 1868 the application to be relieved from the bond was made without having the bond before him and his lawyer.

(4.) George Huguley testified, in brief, as follows: Jackson sent the bond to witness to sign, and he did so; did not read it; supposed it was a proper and usual bond; would have signed it for a million dollars; saw that Jackson and Jones had signed it, and did likewise; knew nothing about the law of bonds; did not intend any fraud; never authorized any change of the bond, and knew nothing of it until 1874, when suit was brought; was appointed to divide the negroes, but did not remember saying anything about the bond; denies any conversation with Edwards or Shepperd in regard to the bond.

(5.) W. H. Huguley testified, in brief, as follows: Jackson sent the bond to witness to sign, and he did so; supposes he read the bond; doesn't remember doing so; intended to sign a legal and proper bond, in accordance with the laws of the state; knew about the size of the estate; supposed it to be worth $40,000.00 or $50,000.00; had no conversation with the probate judge about altering the bond; never authorized the alteration, and knew nothing of it until 1874; denies having any conversation with Edwards or Shepperd in regard to bond.

(6.) Jackson, the administrator, testified, in brief, as follows: Administered in 1859; bond was signed by witness and sent to sureties for signature; after it was returned, it was discovered to be for only $150.00, and the judge of probate altered it. (Other testimony related to management of the estate.)

v 67—12

Other witnesses were introduced by both parties to show good character, etc., whose testimony is immaterial here. From one of them it appeared that there was an injunction in Alabama which prevented the plaintiffs from obtaining the original papers from the probate court, or certified copies of them. (The transcript used was obtained before the injunction issued.)

Plaintiffs in rebuttal introduced the following testimony:

(1.) M. E. Edwards testified, in brief, as follows: Had a conversation with Jones in 1866; he seemed anxious about the Jackson bond; said he expected to go to southwest Georgia, and wanted to be relieved from the bond; he said the amount of it was $150.000.00; also had a conversation with George Huguley in 1866; he said he was troubled about the bond.

(2.) J. C. Whitner testified, in brief, as follows: The matter of the bond and its amount was fully discussed by witness and Jackson before it was given; after a time Jackson said he had arranged the matter, and the bond was given. George Huguley several times expressed himself in regard to the bond, speaking of it as an important item, though no amount was mentioned. (The remainder of Whitner's evidence is immaterial here.)

(3.) W. L. Crayton testified, in brief, as follows: Was probate judge of Chambers county, Alabama, in 1859, when letters of administration were granted to Jakson. The amount of the estate was discussed between Jackson, Jones and W. H. Huguley, and agreed to be worth about $75,000.00; thereupon a bond was agreed upon of double that amount. In writing it, the word "thousand" was accidentally omitted, making the bond read for $150.00. Shortly afterwards witness discovered this, and being unable to find the parties, he inserted the word omitted, so as to make the bond read as was agreed and intended.

The remaining evidence is not necessary to an understanding of the decision.

The jury returned the following verdict :

"We, the jury, find for plaintiffs against W. S. Jackson, as principal, and W. H. Huguley, George Huguley and Reuben Jones, as securities, the sum of $602.13, principal, and the further sum of $496.42, as interest to the 25th of May, 1881 ; and we find in favor of exception number two to auditor's report $744.28, as principal, and the sum of $612.75, as interest to the 25th of May, 1881 ; and we find against exceptions three and four, and in favor of exception number five for $500.00, as principal, and $411.66, as interest to the 23d of May, 1881 ; and we find against exception number six ; and we find the further sum of $103.53, as interest on cost of original suit and cost of this suit. A. J. BOYD, *Foreman."*

The defendants thereupon moved for a new trial on the following grounds :

(1.) Because the court erred in admitting in evidence, over the objection of these defendants, a certified copy of the bond sued on in this case, without evidence *aliunde* of its execution, these defendants having filed a plea of *non est factum.*

(2.) Because the court erred in not granting a non-suit on motion of the said George Huguley, Reuben Jones and W. H. Huguley, after the evidence had been closed by plaintiffs, the said plaintiffs having closed their case without any evidence of the execution of said bond, save only said certified copy of the same, the court holding that a certified copy of this bond from the probate court of Chambers county, Alabama, was *prima facie* evidence of its execution, the plea of *non est factum* being in.

(3.) Because the court erred in allowing the plaintiffs to prove by Reuben Jones, over objections of the securities, that he knew of the value of the estate, and that he knew the law required a bond in double the value of the estate.

(4.) Because the verdict in this case is contrary to the evidence and without any evidence to support it.

(5.) Because the verdict is contrary to the charge of the court.

(6.) Because said verdict as to the defendants, Reuben Jones, George Huguley and W. H. Huguley, is contrary to law.

(7.) Because after the court charged the jury as follows, viz: "The burden of proof in this issue rests upon plaintiffs, and the defendant is not called upon to offer any defense until the plaintiffs by evidence have made out a *prima facie* case against them," the court continued to charge the following erroneous propositions, viz: "When the plaintiffs introduced before you a certified copy of the bond sued on from the office of the judge of the probate court of Chambers county, Alabama, a *prima facie* case against the sureties was made out by the plaintiffs, and the burden of proof was then shifted to the defendants, and in order for them to avoid such liability as result from a breach of this bond, it was incumbent on them to show either that they did not sign the bond themselves, nor authorize any one to sign it for them, or that, if they did sign the bond, they have in some way been discharged from their liability thereon."

(8.) Because the jury found contrary to the following charge of the court, viz: "It is claimed by defendants' plea that when they signed this bond that the penal sum named in the bond was $150.00, and that after they had so signed the bond and delivered it, that the bond was materially altered by the obligee thereof in this, that the word 'thousand' was written in the bond between the words 'fifty' and 'dollars,' so as to change the penal sum named in the bond from $150.00 to $150,000.00, and that this change was without their consent. Such an alteration as this, if the evidence shows it to have been made, was a material alteration. These facts must be proved by the defendants in order to remove the burden put upon them by the introduction of the certified copy of the bond, and if these facts be proved to your satisfaction, there can be no recovery against the defendants in this suit under the law, unless the evidence should show a subsequent ratification of the alteration by defendants, in which event the defendants would be as much bound as though they had themselves made the change in the bond or

directly authorized it.   The burden of proof is cast upon plaintiffs to prove ratification by defendants."

(9.) Because the jury found contrary to the following charge of the court, viz: "If you believe from the evidence that the bond sued on in this case was prepared by W. L. Crayton, the judge of probate of Chambers county, Alabama; that in the bond the penal sum of $150.00 was written; that the bond was then signed by W. S. Jackson, and was then presented to Reuben Jones, George Huguley and W. H. Huguley, and that they then signed the bond as securities for Jackson, and that they intended to sign a bond for $150.00, and that afterwards the bond was, at the suggession of W. S. Jackson, changed by Judge Crayton by inserting in the bond the word 'thousand' between the words 'fifty' and 'dollars,' so as to change the penal sum of the bond from $150.00 to $150,000.00, then you should find the issue on the plea of *non est factum* in favor of defendants, unless you further believe from the evidence that defendants authorized the change to be made, or ratified and adopted the bond as their deed, after the change was made."

(10.) Because the jury found contrary to the following charge of the court, viz : "The contract of a surety is one of strict law, and the liabilities on their contracts will not be extended by implication or interpretation.   A surety cannot be bound further than the very terms of his contract, and if the principal and obligee change the terms of his contract in a material point without his consent, the surety is discharged, unless there be a ratification of such change by the sureties."

(11.) Because the court erred in the following charge, viz: "If you believe from the evidence that defendants, Jones, George Huguley and W. H. Huguley, agreed to go upon the bond of W. S. Jackson as the administrator of H. F. Erwin; that the penal sum in said bond was to be $150,000.00 by the agreement, and that in pursuance of the agreement a bond was prepared, and through mistake

$150.00 was named as the penal sum in the bond instead of $150,000.00, and that the said securities signed the bond for $150.00, but at the time knowing the bond was to be for $150,000.00, became security with that understanding, the fact that by mistake the word 'thousand' was left out of the bond, and was afterwards put in by Crayton, judge of probate of Chambers county, Alabama, would not release the sureties, and under the law the issue on the plea of *non est factum* should be found for plaintiffs." After so charging, the court added: " In order to establish the mistake, the evidence must be clear, unequivocal and decisive as to the mistake," and the verdict was contrary to this latter part of said charge.

. (12.) Because the jury found contrary to the following charge of the court, viz: " If you believe from the evidence that defendants did not agree to go on the bond for $150,000 00, or any other amount, or if you do not believe that they had agreed at all to go on the bond, or if you believe from the evidence that they had agreed to go on the bond for $150,000.00, but when the bond was presented for their signatures that it was for only $150.00, and they signed it, intending then to be bound for only $150.00, and the bond was subsequently, without their consent, raised to $150,000.00, then, unless they subsequently ratified such change, you should find the issue on this plea for the defendants, but if they did ratify it, you should find for plaintiffs."

(13.) Because the verdict is contrary to the following charge of the court, viz: " The contract of the sureties on the bond of an administrator is a joint and several contract, but where one of the sureties is discharged by the act of the obligee, the other sureties are discharged also, unless they consented to such act."

(14.) Because the verdict of the jury in finding in favor of exceptions numbers two and five to auditor's report, as well as one hundred and three dollars and fifty-three cents interest on costs, is contrary to evidence, without any evidence, and contrary to law.

(15.) Because the court erred in refusing to charge, at defendants' request in writing, as follows, viz: " That the obligation of a surety is one into which he voluntarily goes; that it makes no difference what others contemplated or intended, and that the highest evidence of what the sureties intended to do is the evidence of what they did do, in the making of this contract, and unless the jury shall believe that the sureties actually made this very contract sued on for the sum as in it named, or authorized some one to make it for them, or afterwards, if any alteration was made in the bond as made by them, expressly assented to that alteration, having at the time of the as-sent full knowledge of all the material facts and circumstances of the alteration, unless the jury shall believe these conjoint facts, they cannot find verdict against the sureties."

(16.) Because the court refused the following-written request to charge the jury at instance of defendants, viz: " The burden of proof is on the defendants to show from the evidence that a material alteration has been made in the bond, and when this is done, then the burden is on the plaintiffs to show from the evidence that the consent of the sureties was given to the alteration, or that they had knowledge of the alteration, and after such knowledge they ratified it."

(17.) Because the court erred in refusing to charge, on the written request of defendants: " If the jury believe from the evidence that the bond was altered by W. L. Crayton, the judge of probate, and the obligee of the bond by inserting the word 'thousand' after the word 'fifty' and before the word 'dollars' in the bond, after it had been signed by the sureties, and without their knowledge or consent, and without any authority from them, then no act or declaration of theirs, which was done or made by them before they had knowledge of the alteration, can be considered as tending to show a ratification by them of the alteration."

(18.) Because the court refused the following written request of defendants, viz: "If you believe from the evidence that the bond in this case was a good and legal bond for the sum of $150.00 when it was signed by the sureties, and when it was so signed there was no blank, which appears from the face of the bond, which was intended to be filled, and after it was so signed it was afterwards altered by W. L. Crayton by inserting after the words 'one hundred and fifty,' and before the word 'dollars,' the word 'thousand,' so that the bond then read for the sum of one hundred and fifty thousand dollars, then the bond was void as to the sureties, and the plaintiffs cannot recover of them in this action, unless you further believe from the evidence that the sureties gave to said Crayton authority to make said alteration, or unless after said alteration was made the sureties had knowledge of the fact, and after such knowledge they gave their positive assent to the alteration."

(19.) Because the court erred in admitting the bond in evidence, the certificate of the judge of probate not being attached to said purported copy, the only certificate being the one that followed the entire exemplification, over the objection of defendants.

(20.) Because the court erred in rejecting the evidence of W. O. Tuggle, the auditor, by whom defendants proposed to show that the assets referred to by him in his supplemental report were the old insolvent notes in the hands of Jackson.

(21.) Because the court erred in admitting in evidence, over the objections of defendants, parol evidence of Henderson Huguley and George Huguley as to their intention in signing the bond.

(22.) Because the court erred in admitting in evidence, over the objection of defendants, the evidence of George Huguley that it was his intention to sign an honest, square bond.

(23.) Because the court erred in admitting the evidence

of W. H. Huguley, over objection of defendants, that "I intended to sign an honest, proper bond conformable to the law of the state."

The motion was overruled, and defendants excepted.

COX & WIMBISH; FERRELL & LONGLEY, for plaintiffs in error.

B. H. BIGHAM; J. T. GLENN; HENRY JACKSON, for defendants.

UNDERWOOD, Judge.

This was an action brought by John M. Johnson and wife and others against Wyche S. Jackson, as administrator, on the bond of Jackson, and his securities, Reuben Jones, George Huguley and W. H. Huguley. The bond was dated March 16th, 1859, and was for the sum of $150,-000.00, in favor of Wm. L. Crayton, judge of probate of Chambers county, Alabama, and in form was the bond of Wyche S. Jackson, as administrator of Hezekiah F. Erwin, deceased. The declaration alleged a *devastavit* by Jackson, the administrator. That there was due plaintiffs $1,796.27, with interest from the 24th day of May, 1866 at 8 per cent. per annum. That at the May term of Troup superior court plaintiffs had obtained judgment against Jackson, as principal, as administrator, for that amount. That the judgment had not been paid.

The securities filed—1st. The general issue. 2d. *Non est factum.* 3d. That the bond executed by them was for the sum of $150.00 only. That after the signing of said bond by them, the bond was changed by the judge of probate, the obligee in the bond, to $150,000.00, without their knowledge or consent. These pleas were legally verified and filed at the first term of the court.

The plaintiffs introduced in evidence the decree against Jackson, the administrator, rendered at the May term of Troup superior court, 1874, described in plaintiffs' decla-

ration. A certified copy of the application of Wyche S. Jackson to be appointed administrator of H. F. Erwin, deceased, stating that the estate was of the value of $75,000.00, and a certified copy of the bond of the administrator for the penal sum of $150,000.00, with Reuben Jones, Geo. Huguley and W. H. Huguley, securities.

Defendants objected to the admission in evidence of the certified copy of the bond, which objection was overruled and the copy admitted.

The errors assigned in this case arise upon various rulings of the court as to the admissibility of evidence, the refusal to award a non-suit, and the charges of the court as excepted to, as well as refusals to charge as requested, set forth in the motion for new trial.

1. The first error assigned in the motion for a new trial is the admitting in evidence, over the objection of defendants, a certified copy of the bond sued on in this case without other evidence of its execution, there being a plea of *non est factum.* The facts are these: The bond was made in the State of Alabama; the original was not only out of the state, but it appeared that the court of chancery for the eastern division of Alabama had granted an injunction to restrain the procurement of the original bond, or a certified copy thereof; the copy offered in evidence was a transcript from the record of the court of probate in the county of Chambers, Ala., which had been procured before the injunction mentioned. Under the provisions of our Code, sections 3761, 3763, 3766, 3767, 3769, it would seem that under this state of facts secondary evidence is admissible. What better secondary evidence than a copy in a transcript made out and certified by the judge of the court of probate, in which court the original is required by law to be filed and recorded, that court being a court of record?

The bond sued on was made in the state of Alabama. By the provisions of section 2695 of the Code of Alabama. (A. J. Walker's Code), it is provided "that copies of offi-

cial bonds, or other instruments or papers required to be kept by any officer of this state, and transcripts from the books and proceedings required to be kept by any sworn officer of this state, are presumptive evidence in any civil cause, and have the same effect as if the original were produced and proved, upon the certificate of the custodian thereof that it is a true copy of the original."

Let it be borne in mind that an injunction existed to prevent the procurement of a certified copy of the original bond. Was there not in this case a necessity for the admission of secondary evidence as contained in the transcript duly certified, and in fact was not the transcript properly authenticated evidence as high as a certified copy of the bond? The transcript contained a copy, and the transcript was duly certified and authenticated. What is the difference? The sections quoted from our Code clothe the judge of the superior court with discretion, and we think it was properly exercised in this case. It is objected that if the certified copy attached to the transcript would be ordinarily admissible in evidence, yet the plea of *non est factum* being filed, it could have no greater force than if the original were produced. This would undoubtedly be true but for the section of the Code of Alabama §2695, as quoted. If that had been the intention of the legislature of Alabama, they should have stopped at the end of the word "produced." But the statute says "it shall have the same effect as if the original were produced and proved." To give the statute the construction contended for would render the words "and proved" nugatory and void. When the plea of *non est factum* is filed and the original is produced, it must be proved by some mode known to the law, and if the construction contended for prevails, the statute of Alabama should have stopped at the word produced; and the question asked is answered by the statute, which says "it shall have the same effect as if the original were produced and proved," and it follows that, giving it that effect, it must go to the jury

as proved. The statute of Alabama speaks like a tyrant, and must be obeyed. It is not the proper office of this court to repeal any part of a statute by a construction. We have looked in vain for a case from Alabama giving a construction of this section.

We find no error in admitting the bond in evidence, as certified in the transcript.

2. The second ground for new trial was the refusal of a non-suit, the plaintiffs having closed their case without further evidence of execution of the bond, the plea of *non est factum* being filed.

The Code of Alabama, section 2695, quoted, declares that a certified copy of the bond shall have the same effect as if the original had been produced and proved. It is contended that the *lex fori* shall govern, and not the *lex loci*.

We think that the effect and validity of the contract depends upon the *lex loci*, and in addition we may say that the act of congress declares that it shall be entitled to the same faith and credit everywhere in the union. Therefore, taking together the necessity of the case, the Code of Alabama, the certified copy in the transcript, and the act of congress, we find no error in refusing to grant a non-suit.

3. The third ground for new trial is "allowing plaintiffs to prove by Reuben Jones, over objection of defendants, that he knew the value of the estate, and that the law required bond in double the value of estate. " We see no error in this. Jones was one of the securities, defendants sued, and this was a circumstance, if proved, to be considered by the jury in deciding what the original contract was, and how intended to be executed by the securities.

4. The fourth ground for new trial is because the verdict of the jury is contrary to the evidence and without any evidence to support it.

We think there is evidence in the record to support the

verdict. We call attention to the evidence of Judge Crayton, Edwards, Robinson, Winston, Whitner, and Mrs. Johnson. "Because the verdict of the jury is contrary to law as to the securities." We do not think so.

The sixth, seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth grounds for new trial may be considered and disposed of together. We do not think that the verdict of the jury was contrary to those charges, or either of them, taken in connection with the whole charge of the judge.

The fourteenth ground for new trial is, that the jury found contrary to the evidence in relation to exceptions second and fifth to auditor's report, and in finding interest on costs. The verdict in relation to interest on costs was written off. There was evidence to sustain the verdict as to the exceptions second and fifth.

5. In reference to the fifteenth, sixteenth, seventeenth and eighteenth grounds for new trial, they are each in reference to refusals to charge as requested.

We think as much of the charges requested as was good law, and that did not intimate an opinion as to what was proved or not proved, was substantially given to the jury in the entire charge.

The nineteenth ground for new trial is disposed of in what is said as to the first ground for new trial.

6. With reference to the twentieth ground for new trial, we say we have been unable to find in the record the order appointing the auditor. We presume he was regularly appointed. We do not know what his powers under the order were. He made his report in writing. Each party had the right to except. The plaintiffs did so; the defendants did not. The auditor would not be allowed to add to or subtract from the report. If any of the phraseology of the report raised a doubt, he might be heard to explain that. We think the evidence rejected was not of sufficient importance or materiality as to necessarily require a different verdict.

7. As to the twenty-first ground for new trial, we think the evidence of George and W. H. Huguley, as to their intention in signing the bond, was admissible, and that ground for new trial was properly overruled.

The same view will apply to the twenty-second ground for new trial.

And the same as to the twenty-third ground for new trial.

The court below, that tried the case, was satisfied with the verdict. The charge of the judge was full, fair, impartial and exhaustive, grasping the questions of law involved in the case, the issues between the counsel on each side, the issues of fact, and where and on which party the burthen of proof was, as well as what evidence would change the onus. We are satisfied with the manner in which these questions were presented in the charge.

In reviewing the whole case, it will appear that two great questions, and, it may be said, controlling questions, were, What was the intended contract made by the administrator, and what bond was intended and agreed to be signed? and, in connection with this, when did the securities come to the knowledge of the amount of the bond? what silent acquiescence existed from the proofs? what circumstances of ratification and estoppel? The bond was made in 1859. According to the evidence of Crayton, the securities knew, in 1860, the amount of the bond; they conversed with Shepperd about it in 1860. Crayton testifies they all knew the size in a very short time, except Jones, and his best memory is that Jones knew. The evidence of Whitner, Robinson and others, very strongly corroborates Crayton. Edwards says he conversed with Jones about it in 1866. The estate of H. F. Erwin was estimated by the administrator, the securities, and the judge of probate, at $75,000.00. The administrator was allowed to proceed with the administration for a period of from ten to fifteen years, without anything being said by defendants as to the amount of the bond

being $150.00. The administrator was the son-in-law of George Huguley and brother in law to W. H. Huguley and Reuben Jones. They were at the time of signing the bond all men of wealth. The two Huguleys testify they intended to sign a proper, honest, square bond. One of them says he would have signed for a million. Undoubtedly all, except Jones, believed they were signing a bond for $150,000.00. The judge thought he was taking a bond for $150,000 00. If Jones knew the bond was for $150.00 when he signed, and knew the bond was intended to be for $150,000.00, and concealed it for years, might not a jury infer fraud on his part and correct the mistake? *Burge vs. Burge*, 45 *Ga.*, 301–4.

If all parties were mistaken, then the cases in court will control, and in either event the jury in a court of law are authorized to correct the mistake.

If the securities signed the bond with the knowledge and understanding that the bond was to be for $150,000.00, if this is shown by competent testimony, the adding in the face of the bond the word thousand by the principal and payee was not an alteration of the contract, since a mere reduction to writing of what was in fact the agreement of both principal and securities would not be a change of the contract.

If a motion for a non-suit should have been sustained in a particular stage of the case, yet, if the defendant, after the motion is overruled, proceeds, and both he and plaintiff introduce evidence on the issue made by the plea of *non est factum*, and the evidence is sufficient to sustain a verdict for plaintiff, it will not be set aside and a new trial granted because the court refused to grant a non-suit. *Hanson vs. Crawley*, 41 *Ga.*, 303; 51 *Ib.*, 528; 10 Wendell, 93; 17 *Ib.*, 238; 44 Cal., 168; 59 Ill., 364; 53 Me., 89.

It will be perceived upon authority that this is the rule from Maine to California.

Evidence was introduced by both defendants and plain-,

tiffs upon the issue of *non est factum.* The only remaining question of importance was the amount due. There was ample evidence to sustain the verdict, and the court below having sustained it, finding no material error, the judgment of the court below is affirmed.

Judgment affirmed.

CRAWFORD, Justice, dissenting:

I cannot bring my mind to concur in the ruling of the court as to the legal effect of the certificate of the probate judge on the exemplified copy of the bond.

The Code of Alabama provides that such a paper, when so certified, shall have the same effect as if the original were produced and proved. I cannot quite see how that certificate can do more than to prove the copy to be a true copy of the original, and could no more dispense with the proof of execution, where a plea of *non est factum* was filed, than if the original itself were introduced and encountered by such a plea. It could hardly have been intended to have placed the certified copy above the original, and yet such a construction produces such a result.

Quite a similar statute to this existed long before the adoption of the Alabama Code. Clay's Digest, 164, §15. Under this it was decided that the production of an examined or certified copy of an official bond was sufficient without accounting for the absence of the original, unless put in issue by plea. The section of the Code under consideration was doubtless intended to embody the construction which had been given to that statute, or rather the rule of evidence prevailing, as consistent with it, which was that the execution of the bond by the obligors, not being controverted or put in issue by a verified plea of *non est factum*, was admitted as evidence, but if put in issue, then the production of the original would be required by the court. The Code does no more than to dispense, in all cases, with the production of the original,

and allows a certified copy to have the same legal effect, no more and no less than such original would have if produced and proved; that is, produced and identified.

A bond, though approved and recorded, does not preclude the obligors from putting in issue, by a verified plea, the fact of its execution. Caskey *et al. vs.* Nichter, 8 Ala., 622; Elliott *vs.* Mayfield, 4 *Ib.*, 417; Bibb *vs.* Hoyt, 3 *Ib.*, 88.

The fact of execution was successfully controverted and overcome by verified pleas in the cases of Robertson *vs.* Coker, 11 Ala., 466, and Tanner *vs.* Mills, 50 *Ib.*, 356.