No. 142.—COLUMBUS F. SHIVERS, adm'r, &c. plaintiff in error, *vs.* BENJAMIN F. LATIMER, executor, &c. defendant in error.

[1.] S died intestate, leaving real and personal property subject to distribution among his widow, children and a grand-child. O, a minor son, bequeathed by will "all the negroes and effects" to which he was entitled in his father's estate to his brothers and sisters equally, except one, (S,) to whom he gave $1.000. After the death of O, letters of administration were taken out upon the estate of his father; and finding it impossible to divide the real estate in kind, it was sold under an order of Court with a view to a division: *Held*, that O's share of the proceeds did not pass under his will, but was equally distributable between his heirs at law.

In Equity, in Hancock Superior Court. Decision by Judge HARDEMAN, August Term, 1856.

William Shivers died intestate. Subsequently, William O. Shivers, one of his heirs and distributees, and a minor, died, leaving a will, by which he bequeathed " all his negroes and effects which he had, and which he was entitled to by law in his father's estate," to his brothers and sisters. After his death, administration was granted on his father's estate, and under an order of the Ordinary, the lands of intestate were sold for the purpose of distribution. On the trial of a bill filed by the administrator for direction, the Court charged the Jury, " that the proceeds of the sale of the real estate are to be considered and treated by his administrator as land and not as personalty, and as such, do not pass under the will of William O. Shivers." This charge is assigned as error.

The case was heard *ex parte.*

JOHNSTON; T. W. THOMAS, for plaintiff in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] William Shivers, sen. of Hancock County, died intestate in the year 1852, leaving a wife and ———— children, and one grand-child, whose parent had deceased. Shortly after his death, Oscar, a *minor* son, died, leaving a will bequeathing his "negroes and *effects*," to which he was entitled in his father's estate, to be equally divided among seven of his brothers and sisters, Sydney C. excepted, to whom he gave one thousand dollars. The testator appointed Benjamin F. Latimer his executor.

After the death of Oscar Shivers, Columbus F. Shivers obtained letters of administration on the estate of Wm. Shivers, sen. The real estate consisted of a plantation of about fifteen hundred acres of land, with a fine dwelling house and outbuildings upon it, an extra fine mill and mill-house, and a cotton factory. A division in kind being inconvenient, if not impossible, the administrator of William Shivers, sen.

obtained an order from the proper Court to sell, and did sell, the real estate.

The question is, did the interest of Oscar Shivers in the real estate pass by his will?

Judge THOMAS held, and so instructed the Jury, that the proceeds of the sale of the real estate of Wm. Shivers, sen. deceased, was to be considered and treated as land, and not as personalty; and as such, did not pass under the will of Oscar Shivers, but was to be equally distributed as an intestate fund among the heirs at law of Oscar Shivers.

This decision is excepted to, and the line of argument submitted in behalf of the plaintiff in error is this: It is insisted that there is no reasonable difference as to the equitable conversion of land into money, between this case and that of a testator requiring a sale of his real estate for the purpose of making an equal division; taking the bill to be true, and the fact is not denied, that in order to make an equal division, a sale was necessary and unavoidable; and that had Oscar Shivers lived, he would have enjoyed this interest as money —not as land.

That had the order been granted for the sale before the death of Oscar Shivers, this property would have been transmissible by his will; and that inasmuch as the necessity for the order was independent of his death, and existed before that event, the conversion should be considered as relating back to the time of the death of William Shivers, sen. ; that Courts of Equity discourage the conversion of an infant's money into land, because this would contract his power of bequeathing his property by will. (1 *Vernon*, 435; 19 *Ves.* 123.) In this case, the conversion would enlarge that power.

That Courts of Equity should lean as far as possible toward the conversion contended for, it being in harmony with the genius of our laws, which discourage the ancient restrictions on land in England; and especially as it accords with our Statute of Distributions, which places real and personal estate of an intestate on the same footing.

This is the strength of the plaintiff's case, as presented by the learned and able Counsel.

Whether property is to be treated and considered as real or personalty, must be determined in every case by the character impressed upon it by the will of the testator, or by law, at the death of the testator or intestate. We are aware of no exception to this rule. Where the testator directs, by will, his land to be sold and the proceeds distributed among the legatees, in contemplation of law, the conversion was made at and from the death of the testator, because this was his intention. But the law, and not the intention of the party, fixes the nature of an intestate's property at and from the time of his death; and no subsequent conversion made by the representative by order of the Courts can change it.

In this case, the heirs at law of Wm. Shivers, sen. took his landed estate either by descent or under the Statute of Distributions, subject to the payment of his debts, if needed for that purpose. They might have enjoyed it as joint tenants or tenants in common. A sale was deemed preferable, and it was directed by the Ordinary. But that did not and could not alter the quality of the estate, with all the incidents attaching thereto. Upon the death of Oscar Shivers, one of the minor sons, his share was cast upon his mother, and brothers, and sisters; and it was not in his power by will, being an infant, nor in the power of the Court, by means of the sale thereafter ordered, to divest the heirs at law of this minor of their interest in the land. In a M. S. case cited in *Oxendon vs. Lord Compton*, (4 *Bro. Ch. Rep.* 235,) Baron *Smythe* says: "It is a principle not only as to lunatics, but infants, that no part of their property, during their incapacity, can be changed to the prejudice of the successor. This principle is proved in many cases." (*See Note* (3) *to Raithby's Edition of Vernon's Reports.*)

It is true, that in the case of the *Earl of Winchelsea vs. Norcliffe*, (1 *Vernon* 435,) the Lord Chancellor remarked, "That the infant at seventeen years might dispose of his personal estate, though he could not of his real; and that if the

trustees, at their pleasure, might turn his personal estate into real, they thereby would debar the infant of the right and privilege which the law gave him, and might, at their pleasure, advance *the heir* and prevent an infant from providing for his younger children, which was unreasonable."

We have no fault to find with this suggestion. It is quite obvious, however, that the reason which gave rise to it cannot operate with us in this country. And further, that it does not favor the general proposition in support of which it seems to be cited, namely: that Courts lean to the policy of enlarging the testamentary power of infants. In many, if not most of the States of the Union, the power of making wills has been taken away from minors altogether. And it is hardly reconcilable with sound reasoning, that while one of immature years is incapable of contracting to the amount of five dollars, except for necessaries, he may dispose, by will, of property of the value of thousands.

The case of *ex parte Philips*, (19 *Ves.* 123,) decides only that where the conversion of money into land is made for an infant, it should be so done as not to affect his powers over the property, by will, which the law allows him to exercise during his minority. The Court was influenced, no doubt, by the same reason which prompted the observation of Lord *King*, in the case just examined from *Vernon*.

Counsel insist that the principle for which they contend is in keeping with the spirit of our laws, and especially with the Statute of Distributions—breaking down the distinction between real and personal property.

I admit that the power to devise land should be co-extensive in Georgia with that of bequeathing negroes. The law, however, is otherwise; and it is for the Courts to change it.

Instead, however, of extending the testamentary capacity to real estate, would it not be better to restrict it as to slaves, at least until the infant attained to a certain age beyond that allowed by law for the disposition of personal property?