LANGMADE, administrator, *vs.* TUGGLE *et al.*

1. Where, after the birth of a bastard, his mother married and had other children by her husband, upon the death of the bastard leaving real estate, the title passed to his mother by inheritance, and thereupon the marital rights of her husband attached; and when she died, the title was cast upon him by operation of law, and upon his death before reducing the property to possession, the title passed to his children as his heirs at law. These children might have brought suit in their own name, there being no administration and no debts, but if they preferred, they could have an administrator appointed for the estate of the bastard, and he could sue for and recover the property for the purpose of sale and division among them; nor, in a suit by such administrator, could the tenant in possession object to the administration as void.

2. The defendants had no title by prescription in this case.

(*a*) The verdict was demanded by the evidence, and the grant of a new trial was error.

April 13, 1887.

Bastards. Inheritance. Title. Prescription. Husband and Wife. Administrators and Executors. Verdict. New Trial. Before Judge BRANHAM. Haralson Superior Court. July Term, 1886.

Reported in the decision.

W. C. ADAMSON; W. F. BROWN, for plaintiff in error.

BLANCE & NOYES; J. M. McBRIDE, for defendants.

BLANDFORD, Justice.

William Beck was a bastard; he was born before his mother married. She intermarried, after his birth, with a

man named Stephen Beck, by whom she had several children. William Beck died before his mother, and she died before her husband, Stephen Beck. The husband then died, leaving several children. William Beck was the grantee of a certain lot of land, then in the county of Carroll, now in the county of Haralson. He drew it and the grant issued to him after his death. Some of the children of Stephen Beck, his heirs at law, applied to Mr. Langmade to take out letters of administration upon the estate of Beck, in the county of Washington, where Beck died; and he brought an action against the defendants in error to recover this land, and a recovery was had. The court granted a new trial, and Langmade, the administrator, excepted.

Several points arise in this case. William Beck being a bastard, and having no brothers and sisters who could inherit from him, his mother was the sole heir at law, and the title to this property was cast upon her. And thereupon the marital rights of the husband attached; she having died first, the title was cast upon him by operation of law, but he died before reducing it into possession. His death cast the title upon his heirs at law, his children.

1. One of the points is that this administration was wrong; that there was no power in the court of ordinary to grant it. We think the court of ordinary did have power to grant administration at the instance of these parties, William Beck's half brothers and sisters. Although they could not inherit from Beck, they could inherit from his mother, who was their mother. And the father, although no kin to William Beck, could inherit from the mother, and upon the father's death, these children could inherit from him. The title to this land went, by operation of law, to them, and they had the right to have this administration upon the estate; it was nobody's business but their own, and it did not lie in the mouths of the defendants in error, who were the tenants in possession, to say that this administration was wrong. They had only

gotten possession of this land a year or two before this action of ejectment was brought. Before that, the land was vacant, wild land; nobody had been in possession; and if these parties wanted to have the administration for the purpose of a sale and division among themselves, it was a proper administration, and this administrator, Langmade, had a right to recover the land for the purposes of that administration. There being no debts of Beck (he died in 1835 or 1836), the administrator had a right to sell it for division among the heirs at law. The verdict was right, finding for Langmade as the administrator of Beck, and there was no reason for any grant of a new trial in this case.

2. The title was in him for the purpose of recovering this land, and those parties had no title by prescription. They had some pretended deeds to it; but, speaking for myself and not for the other members of the court, I can say that I have looked at the deeds, and I am satisfied they are very badly fixed up forgeries. I knew some of the parties to them, and remember one of the witnesses, whose name is put there as a justice of the peace in the county of Marion, where I lived. He did not live in Marion county, but always lived at Geneva, in Talbot county, and never was a justice of the peace or notary public for the county of Marion. But be that as it may, the title was in William Beck. When the State granted the title, it passed to his heirs at law, and they had a right to have administration. They could bring this suit in their own name without administration, or they could have administration and proceed in the name of the administrator.

It is probably overlooked by counsel that under the act of 1856, where no administration is taken out upon a dead man's estate within five years, the statute of limitations can continue to run; it does not prevent the statute of limitations from running after the five years. The administration may be taken out at any time after the five years, and they are not hurt by its being taken out after the five

years have elapsed. They get all the benefit of the statute of limitations to which they would be entitled under the act of 1856. It is not very well codified, but will be found in the statute of limitations. Acts 1856.

So we think the court did wrong to grant a new trial in this case, the verdict having been demanded by the law and the evidence.

Judgment reversed.